UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---

NEOPART TRANSIT, LLC,   :
      Plaintiff,  :
          :
   v.       :  No. 5:17-cv-3955
          :
CBM N.A. INC.; CBM US INC.;  :
WALTER SUPPLEE; and CBM SAS, :
      Defendants. :

---

**O P I N I O N**
**Defendant Walter Supplee's Motion to Dismiss, ECF No. 29—Granted in Part**
**Motion to Dismiss of Defendants CBM N.A. Inc., CBM U.S. Inc.,**
**and CBM SAS, ECF No. 30—Granted in Part**

**Joseph F. Leeson, Jr.**             **June 13, 2018**
**United States District Judge**

   In this case, the plaintiff, Neopart Transit, LLC, a distributor of parts for transit busses, alleges that a former employee of its predecessor stole Neopart's confidential and proprietary information and resigned to work for another entity, which used Neopart's information to compete and harm its business. The plaintiff brings numerous claims against both the former employee, Walter Supplee, the entity he left to work for, CBM US Inc., that company's parent corporation, CBM SAS, and its affiliate, CBM N.A. All of the defendants move to dismiss on various grounds: Supplee for failure to state a claim and the corporate defendants for improper service and lack of personal jurisdiction. For the reasons discussed below, Supplee's motion is granted in part and denied in part, and the corporate defendants' motion is granted in part and denied without prejudice in part to allow the parties to conduct jurisdictional discovery.

# I.     BACKGROUND

The following facts are drawn from Plaintiff's Amended Complaint. Plaintiff Neopart Transit, LLC, is the successor of Neopart, LLC, which was founded as the parts-supply division of Neoplan USA, a manufacturer of transit buses.[1] Plaintiff purchases transit bus parts from suppliers and resells them to operators of transit bus systems in the United States and Canada. Plaintiff takes great care to protect proprietary information surrounding its operations, such as the unique part numbers it assigns to the parts it sells, the cross references between Neopart part numbers and its suppliers' part numbers, pricing arrangements with suppliers, customer purchasing patterns, and knowledge of which transit bus operators use which parts.

Defendant Walter Supplee began working for Neopart in 1997 as a salesman, and had access to Plaintiff's supplier and parts-related information. He signed a Confidentiality Agreement and Security Policy in 2012 which prohibited him from divulging Neopart's confidential and proprietary information outside of Neopart. In 2014, Supplee resigned and, according to Plaintiff, took Neopart's confidential and proprietary information with him.

Plaintiff alleges that Supplee began working for Defendant CBM SAS and its affiliates after he left Neopart. Defendant CBM SAS, a French corporation, distributed spare parts for transit buses. Defendant CBM N.A., a subsidiary of CBM SAS headquartered in Canada, operates as CBM SAS's North American distributor. By September 2014, Supplee had started working with Defendant CBM SAS and Defendant CBM N.A. to grow their business in the United States. Later that month, CBM SAS formed Defendant CBM US as a subsidiary to

---

[1]     Unless otherwise indicated, this Court will refer to these entities collectively as "Neopart," as Plaintiff seems to do. *See infra* Section III.A.1.

market and distribute aftermarket transit bus parts. According to Plaintiff, CBM[2] had no material presence in the market for transit bus parts in the United States before it hired Supplee.

Plaintiff alleges that Supplee used the information he took from Neopart to help CBM gain an unfair competitive advantage, causing Neopart to lose business from both the Massachusetts Bay Transit Authority (MBTA) and the Southeastern Pennsylvania Transit Authority (SEPTA), two longtime customers. According to Plaintiff, the knowledge of Neopart's supply chain, pricing methods, and part number cross references that Supplee took with him enabled CBM US to obtain SEPTA contracts that Neopart historically had won. Plaintiff also argues that Defendants used Neopart's information to interfere with its existing business relationships. Neopart entered an agreement with John Bruce UK Ltd. in 2006 to act as John Bruce's exclusive parts distributor in the United States. Plaintiff contends that Supplee knew which Neopart customers had approved Neopart's John Bruce products, as well as the product number cross references for John Bruce components, and that CBM used this information to interfere with Neopart's agreement. Plaintiff alleges that John Bruce breached the exclusive distribution agreement with Neopart as a result. Plaintiff also alleges that CBM interfered with its relationship with USSC Group, a supplier of seats and seat parts to Neopart, which prevented Neopart from securing future competitive pricing and service arrangements from USSC Group.

Plaintiff brought suit against Supplee, CBM SAS, CBM N.A., and CBM US, alleging a violation of the Defend Trade Secrets Act of 2016, misappropriation of trade secrets, tortious interference with the exclusive distribution agreement, tortious interference with prospective contractual relations, unfair competition, and civil conspiracy. Additionally, Plaintiff alleges breach of the Confidentiality Agreement and breach of fiduciary duty against Supplee, and

---

[2]     This Court refers to CBM SAS, CBM N.A., and CBM US collectively as "CBM" or "the CBM defendants."

claims for aiding and abetting breach of fiduciary duty and tortious interference with the

Confidentiality Agreement against the three CBM defendants.

## II.    LEGAL STANDARDS

### A.  Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

The Honorable Mitchell S. Goldberg of this Court aptly described the Rule 12(b)(2)

motion to dismiss standard as follows:

> When reviewing a motion to dismiss for lack of personal jurisdiction under
> Federal Rule of Civil Procedure 12(b)(2), I must accept the plaintiff's allegations
> as true and resolve disputed facts in favor of the plaintiff. *Pinker v. Roche
> Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). However, once a defendant has
> raised a jurisdictional defense, the plaintiff must "prove by affidavits or other
> competent evidence that jurisdiction is proper." *See Metcalfe v. Renaissance
> Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). If an evidentiary hearing is not
> held, a plaintiff "need only establish a prima facie case of personal jurisdiction."
> *Id.* A plaintiff meets this burden by "establishing with reasonable particularity
> sufficient contacts between the defendant and the forum state." *Provident Nat.
> Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987).

*Campbell v. Fast Retailing USA, Inc.*, No. CV 14-6752, 2015 WL 9302847, at *2 (E.D. Pa. Dec.

22, 2015).

### B.  Rule 12(b)(5) Motion to Dismiss for Improper Service

A federal court may dismiss a complaint for "insufficient service of process." Fed. R.

Civ. P. 12(b)(5). "[T]he party asserting the validity of service bears the burden of proof on that

issue." *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993).

*See also White v. Green*, 2009 WL 3209647, at *1 (E.D. Pa. Oct. 6, 2009) ("In resolving a

motion under Rule 12(b)(5), the party making the service has the burden of demonstrating its

validity when an objection to service has been made.") (quotation omitted), *aff'd*, 382 F. App'x

199 (3d Cir. 2010).

**C. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**III.    ANALYSIS**

**A.  <u>Supplee's Motion to Dismiss</u>**

Supplee moves to dismiss the claims against him (Counts III, IV, VI, VIII, and IX). He argues that Plaintiff bases all its claims against him on the assertion that he was an employee of Plaintiff Neopart Transit, LLC, and that he entered a Confidentiality Agreement with Neopart Transit; however, Neopart Transit, LLC, did not yet exist at the time of the events at issue. According to Supplee, he worked for a company called Neopart, LLC, until September 2014, and began working for CBM US in October 2014. Supplee Mot. 3, ECF No. 29. He points out that,

according to public records searches, Plaintiff Neopart Transit, LLC, was not created until February 2016. *Id.* Therefore, according to Supplee, Plaintiff cannot state any claim against him concerning the Confidentiality Agreement or his employment with Neopart.

1. **Supplee's motion to dismiss Count III is denied because Plaintiff has sufficiently alleged that Supplee breached the Confidentiality Agreement.**

Supplee argues that Plaintiff's breach of contract claim fails because he was never Plaintiff's employee nor a party to a contractual agreement with Plaintiff. The Complaint alleges that Supplee began employment with "Neopart and its affiliates in 1997" and signed the Confidentiality Agreement on January 16, 2012. Amend. Compl. ¶¶ 41-42. Plaintiff alleges that Neopart, LLC, was the original owner of the claims in this case to the extent that the claims accrued prior to March 11, 2016, when Neopart, LLC assigned all its claims to Plaintiff. Amend. Compl. ¶ 8.

Supplee concedes that Plaintiff asserts in the Complaint that it is bringing claims formerly belonging to Neopart, LLC, but points out that the Amended Complaint repeatedly refers to Supplee's employer as "Neopart,"[3] which the Amended Complaint explicitly defines as Plaintiff Neopart Transit, LLC, not its predecessor, Neopart, LLC. Thus, Supplee insists, Plaintiff alleges employment and contractual relationships between Plaintiff and Supplee that cannot have existed because they predated Plaintiff's formation.

Although creative, Supplee's argument is overly formalistic. Plaintiff's Complaint is less than precise in its drafting, and is ambiguous as to whether "Neopart" in the statement of its claims refers to Plaintiff Neopart Transit, LLC, or its predecessor, Neopart, LLC. The preamble to the Amended Complaint specifically defines "Neopart" as referring to Plaintiff Neopart

---

[3] For example, in Count III, the breach of contract claim against Supplee, Plaintiff alleges that "Neopart and Supplee entered into a Confidentiality Agreement and Security Policy, which is a valid and enforceable contract." Amend. Comp. ¶ 90.

Transit, LLC. Amend. Compl. 1 ("Plaintiff Neopart Transit, LLC ('Plaintiff' or 'Neopart') brings this action against Defendants . . . ."). However, the Amended Complaint also clarifies that Neopart, LLC is the original owner of the claims to the extent that they accrued before March 11, 2016, and alleges that Supplee entered the Confidentiality Agreement in 2012 and breached it in 2014 when he went to work for CBM. Amend Compl. ¶¶ 8, 45-47, 90-91. According to the Amended Complaint, then, Neopart, LLC, was the original owner of any action arising from the breach of the Confidentiality Agreement and Supplee's employment prior to 2014. Plaintiff's use of "Neopart" throughout the Amended Complaint could be read as a shorthand for "Plaintiff Neopart Transportation, LLC, and, to the extent the claim arose before March 11, 2016, Neopart, LLC." Mindful that ambiguities should be construed in favor of the pleader, this Court concludes that Plaintiff has stated a claim for breach of the Confidentiality Agreement against Supplee. *See Walsh v. Corzine*, No. 06-CV-6075(WJM), 2008 WL 2277098, at *3 (D.N.J. June 2, 2008) ("All doubts and ambiguities in a complaint should be resolved in the pleader's favor.") (citing *Herman v. Mut. Life Ins. Co. of N.Y.*, 108 F.2d 678, 679 (3d Cir. 1939)); *see also Llewellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp. 2d 1062, 1074 (D. Colo. 2009) (interpreting complaint in light most favorable to plaintiff and denying motion to dismiss where it was not always clear which of similarly-named corporate entities short-form names in complaint referred to). Supplee's motion is denied with respect to the breach of contract claim.

## 2. The motion to dismiss Count IV is denied because the gist of the action doctrine does not bar Plaintiff's breach of fiduciary duty claims.

Similar to his argument in support of dismissing the breach of contract claim, Supplee contends that he was never Plaintiff's employee, so Plaintiff cannot prevail on its claim that he breached a fiduciary duty by improperly using "Neopart's confidential and proprietary information while employed by Neopart." Amend. Compl. ¶ 95. This Court rejects this

argument for the same reasons as above: Supplee admits that he was an employee of Neopart, LLC, until 2014, and Plaintiff asserts that it acquired all Neopart, LLC's claims.

Supplee also claims that the gist of the action doctrine bars the breach of fiduciary duty claim because that claim arises solely from the Confidentiality Agreement and duplicates Plaintiff's breach of contract claim. The gist of the action doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Freedom Med. Inc. v. Gillespie*, 634 F. Supp. 2d 490, 516–17 (E.D. Pa. 2007) (quoting *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 13 (Pa. Super. Ct. 2002)). The gist of the action doctrine bars breach of fiduciary duty claims if the duty alleged originates in the obligations of a contract. *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 620 (E.D. Pa. 2010). But many fiduciary obligations are imposed "'as a matter of social policy' rather than 'by mutual consensus,'" and thus derive from principles of tort law rather than from the agreement of contracting parties. *Id.* (quoting *Bohler-Uddenholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 105 (3d Cir. 2001)). As a result, as long as the fiduciary duties at issue extend beyond the limits of a "contract due to the parties' relative positions, the gist of the action doctrine will not bar a claim for breach of loyalty." *Orthovita, Inc. v. Erbe*, Civ. A. No. 07-2395, 2008 WL 423446, at *8 (E.D. Pa. Feb. 14, 2008) (citation omitted). By contrast, "breach of fiduciary duty claims are barred by the gist of the action doctrine if there are 'no allegations of breach of fiduciary duty or duty of loyalty that transcend or exist outside the parties' contractual agreements.'" *DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 235 (E.D. Pa. 2017) (quoting *Certainteed Ceilings Corp. v. Aiken*, Civ. A. No. 14-3925, 2015 WL 410029, at *8 (E.D. Pa. Jan. 29, 2015)).

The Confidentiality Agreement Supplee signed in January 2012 seems to relate primarily to employee access to Neopart's computerized information:

> Any individual with authorized access to Neopart computer information system, records or files is given access to use the Neopart data or files solely for the business of Neopart and must not divulge this information outside of Neopart except for approved Neopart business requirements approved by the President

Amend. Compl. ¶ 43. The Agreement permits employees to access data solely to perform job responsibilities and prohibits unauthorized use of information "in the Neopart information system or records." Confidentiality Agreement at 1, Ex. 1 to Pl.'s Opp. Supplee, ECF No. 33-1. Additionally, the Agreement summarizes a variety of security measures and procedures designed to protect confidential information in Neopart's computer system, such as password protection, requirements that employees log off when leaving their workstations, and an agreement to secure and dispose of "outputs or files you create." *Id.* at 2. In Count III of the Amended Complaint, which alleges the breach of the Confidentiality Agreement, Plaintiff describes the Agreement as a condition of employees' access to an improved computer system that allowed employees "greater access" to Neopart's confidential information. Amend. Compl. ¶¶ 89-90.

Plaintiff's Amended Complaint does not specify the format or content of the confidential and proprietary information that Supplee allegedly used in breach of his fiduciary duties. Pennsylvania law imposes a broad duty on an employee not to disclose confidential information obtained through a confidential employment relationship. *See Christopher M's Hand Poured Fudge, Inc. v. Hennon*, 699 A.2d 1272, 1276 (Pa. Super. Ct. 1997) (holding that employee had confidential relationship with employer and thus had a duty not to use or disclose employer's trade secrets); *see also Neopart Transit, LLC v. Mgmt. Consulting, Inc.*, No. CV 16-3103, 2017 WL 714043, at *15 (E.D. Pa. Feb. 23, 2017) (declining to apply gist of the action doctrine to preclude fiduciary duty claims in suit by Neopart Transit, LLC, alleging misuse of confidential information by former employees); *Freedom Med. Inc. v. Gillespie*, 634 F. Supp. 2d 490, 517

(E.D. Pa. 2007) ("Pennsylvania law, however, imposes a common law duty on an employee not to use or disclose trade secrets obtained in the course of a confidential employment relationship.") (quoting *Christopher M's Hand Poured Fudge, Inc.*)). Neopart's Confidentiality Agreement seems to regulate employees' access to confidential information through the updated computer system,[4] and Supplee's fiduciary duties as an employee may have extended to other types of information obtained by other means. Therefore, depending on the facts ultimately proven, Supplee may have had fiduciary duties extending beyond the scope of the Confidentiality Agreement. *See Gillespie*, 634 F. Supp. 2d at 517 (denying motion to dismiss because plaintiff had pleaded allegations "which could, depending on the facts ultimately proved, give rise to independent duties to refrain from disclosing or misappropriating trade secrets or from breaching a fiduciary duty."). This Court therefore declines to apply the gist of the action doctrine and denies Supplee's motion to dismiss Plaintiff's breach of fiduciary duty claim.

3. **The motion to dismiss Count VII is denied because Supplee has not shown that Plaintiff has failed to state a claim for tortious interference with a contract.**

Supplee states in his motion that he moves to dismiss the claim for tortious interference with a contract in Count VII because it is predicated on the Confidentiality Agreement. Supplee relies on the same argument rejected above, that Plaintiff cannot base any claims on its assertion that it entered the Confidentiality Agreement with Supplee because Plaintiff did not yet exist at the time Supplee signed the Agreement. *See* Supplee Mot. ¶ 16. Supplee offers no other argument in favor of dismissing the claim for tortious interference with a contract. Therefore, his motion is denied with respect to Count VII.

---

[4]     This Court defers any construction of the terms or scope of the Confidentiality Agreement.

**4. The motion to dismiss Count VIII is granted because Plaintiff has not alleged a sufficient likelihood of a prospective contract to state a claim for tortious interference with prospective contractual relations.**

Supplee moves to dismiss Plaintiff's claim for tortious interference with prospective contractual relations and argues that Plaintiff has not identified any "specific, non-speculative prospective contract" with which Supplee interfered. Supplee Mot. 8. In Pennsylvania, a claim for tortious interference with prospective contractual relationships consists of the following elements: (1) the existence of a prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) a reasonable likelihood that the relationship would have occurred but for the defendant's interference. *See Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009) (citing *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 530 (3d Cir. 1998)). A prospective contractual relationship is "something less than a contractual right, something more than a mere hope." *BP Envtl. Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 412–13 (E.D. Pa. 2013) (quoting *Phillips v. Selig*, 959 A.2d 420, 428 (Pa. Super. Ct. 2008)). Courts do not find a reasonable likelihood that a prospective contractual relationship would have occurred if a plaintiff only presents evidence of a current business relationship. *See id.* (holding that evidence of exclusive ten-year relationship between parties did not support inference that contracts would have been renewed, because "a mere historical relationship between parties is not sufficient to show a prospective contractual relationship"); *see also Phillips v. Selig*, 959 A.2d 420, 428–29 (Pa. Super. Ct. 2008) (holding that evidence of parties' twenty-year business relationship was insufficient as a matter of law to show a reasonable likelihood of a future contractual relationship).

Plaintiff claims that it has identified prospective relationships with pre-existing customers MBTA and SEPTA and a mechanism by which it would routinely secure repeat contracts with those customers. Plaintiff points to its longstanding relationship with the two customers and the history of winning contracts based on Plaintiff's use of its confidential information to develop competitive bids. It complains that "equipped with Neopart's confidential and proprietary information from Supplee, CBM bid on and was awarded SEPTA contracts that Neopart historically had won." Amend. Compl. ¶ 62. In short, Plaintiff asserts that CBM won contracts through the bidding process that Neopart historically had won. But Neopart's historical relationship with its clients does not establish a prospective contractual relationship. Nor does its own optimism that it would in fact win the contracts during the bidding process show the required reasonable certainty.[5] *See Santana Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 140–41 (3d Cir. 2005) (rejecting argument that contract was reasonably probable even though plaintiff had 60% of the market share and a favorable track record with the customer, which had specified plaintiff's products for use in project, because facts did not establish probability that plaintiff was going to be awarded contract); *Solid Wood Cabinet Co. v. Partners Home Supply*, No. CIV.A. 13-3598, 2015 WL 1208182, at *9 (E.D. Pa. Mar. 13, 2015) ("Being offered the opportunity to bid for work is not sufficient to create a prospective contractual relation, without evidence that it was reasonably probable that plaintiff would have been the winning bidder, but for the actions of defendants."). *Cf. TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 836 F. Supp. 2d 274 (E.D. Pa. 2011) (holding that plaintiff stated tortious interference claim when it alleged that it had made "considerable efforts" to sell trash-compactor

---

[5] *Joyce v. Alti Am., Inc.*, on which Supplee relies, was decided before *Twombly* and *Iqbal* altered the pleading standard. No. CIV. A. 00-5420, 2001 WL 1251489, at *4 (E.D. Pa. Sept. 27, 2001) ("In our view, these allegations are sufficient under the liberal pleading requirements of Rule 8(a).").

products to city by placing them at local universities and that individuals from those schools

"actively" discussed the trash cans with the city on behalf of distributor, but that city had

ultimately entered into a contract with defendant even though plaintiff could have provided

products at a lower cost); *Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 337–38 (M.D.

Pa. 2014) (finding reasonable likelihood element satisfied where plaintiff alleged that it

performed initial government contract with great success and historically had received upgrade

contracts when an initial project was successful). Nor has Plaintiff shown a "mechanism" by

which it would routinely secure contracts. *Cf. Liberty Mut. Ins. Co. v. Gemma*, No. 2:16-CV-

00483, 2018 WL 1382646, at *14 (W.D. Pa. Mar. 19, 2018) (allowing tortious interference claim

where plaintiff insurer had long-standing relationship with real estate company that would refer

its customers to plaintiff); *Posner v. Lankenau Hospital*, 645 F. Supp. 1102 (E.D. Pa. 1986)

(finding that physician had sufficiently alleged likelihood of additional contracts where he

alleged the existence of referral and consultation patterns at the hospital that gave a specific

foundation for his claim).

Accordingly, Plaintiff has not stated a tortious interference with prospective contractual

relations, and this Court grants Supplee's motion to dismiss Count VIII.

### 5. The motion to dismiss Count IX is denied because Plaintiff has stated a claim for unfair competition, which does not require an employment relationship.

Supplee argues that Plaintiff's unfair competition claim assumes his prior employment

with Plaintiff and that, because Supplee was an employee of Neopart, LLC, not Plaintiff,

Plaintiff's claim fails. As discussed above, Supplee was an employee of Neopart, LLC, and

Plaintiff has alleged that it assumed Neopart, LLC's claims. Moreover, Plaintiff argues correctly

that an unfair competition claim under Pennsylvania law does not require an employment

relationship. "Pennsylvania courts have recognized a cause of action for the common law tort of

unfair competition where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information." *Synthes (U.S.A.) v. Globus Med., Inc.*, No. 04-1235, 2005 WL 2233441, at *8 (E.D. Pa. Sept. 14, 2005) (citations omitted). As discussed above, Plaintiff has alleged claims of tortious interference, breach of fiduciary duty, and breach of contract; these claims, premised on the illicit use of confidential information, withstand a motion to dismiss. Therefore, Plaintiff's unfair competition claim, premised on the same allegations, survives as well. *See DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 246–47 (E.D. Pa. 2017) (denying motion to dismiss where complaint alleged that defendants tortuously interfered with contractual relations and diverted customers by exploiting access to plaintiff's confidential information). Therefore, Supplee's motion is denied with respect to Count IX. .

### B. <u>CBM Defendants' Motion to Dismiss</u>

Defendants CBM SAS, CBM N.A., and CBM US (collectively, "the CBM Defendants") also move to dismiss the Amended Complaint pursuant to Rules 12(b)(2), 12(b)(5), and 12(b)(6). They contend that Plaintiff has not served the foreign defendants, CBM SAS and CBM N.A., with the summons and Amended Complaint, and that this Court lacks personal jurisdiction over those defendants. Additionally, they argue that Plaintiff's claim for tortious interference with prospective contractual relations is not sufficiently specific, and that plaintiff's aiding and abetting breach of fiduciary duty claim fails because the underlying breach of fiduciary duty claim against Supplee fails.

**1. The CBM Defendants' motion to dismiss Plaintiff's claim for tortious interference with prospective contractual relations is granted.**

As discussed above with respect to Supplee's motion to dismiss, Plaintiff has not alleged a likelihood of a prospective contract sufficient to state a claim for tortious interference with prospective contractual relations. *See* Section III.A.4. Therefore, the CBM Defendants' motion with respect to Count VIII is granted as well.

**2. The CBM Defendants' motion to dismiss Plaintiff's aiding and abetting claim is denied because the underlying claim of breach of fiduciary duty survives.**

The CBM Defendants argue that Supplee did not breach any fiduciary duty to Neopart, and therefore his claim that the CBM Defendants aided and abetted Supplee's breach of fiduciary duty must fail as well. They also contend that Plaintiff has not alleged that the CBM Defendants knew of the alleged breach, assisted it, or encouraged it, as required to state a claim for aiding and abetting. *See DePuy Synthes Sales, Inc. v. Globus Med., Inc.*, 259 F. Supp. 3d 225, 242 (E.D. Pa. 2017) ("Aiding and abetting a breach of fiduciary duty under Pennsylvania law requires: (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach.").

However, as discussed above in Section III.A.2., Plaintiff has stated a claim that Supplee breached a fiduciary duty. Additionally, Plaintiff alleges that Supplee knew he would be employed by CBM when he announced his resignation from Neopart, Amend. Compl. ¶ 46, that CBM SAS and CBM N.A. knew that Supplee was taking Neopart's confidential information with him when he left, Amend. Compl. ¶ 100, and that CBM used this information to enter the transit bus part market in the United States, Amend. Compl. ¶ 48. Plaintiff has stated a claim

against Defendants for aiding and abetting Supplee's breach of fiduciary duty, and Defendants' motion to dismiss Count V is denied.

**3. The CBM Defendants' motion to dismiss for lack of personal jurisdiction is denied without prejudice to allow the parties to conduct jurisdictional discovery.**

The CBM Defendants argue that this Court lacks personal jurisdiction over CBM SAS and CBM N.A. (collectively, "the Foreign CBM Defendants"). They contend that "there is simply no jurisdictionally significant relationship between either of the Foreign CBM Defendants and the Eastern District of Pennsylvania," pointing out that the Foreign CBM Defendants do not do regular business in or maintain a presence in Pennsylvania and that CBM US, not the Foreign CBM Defendants, hired and paid Supplee. CBM Mot. 20, ECF No. 30-1. The CBM Defendants insist that CBM US's jurisdictional contacts cannot be imputed to the Foreign CBM Defendants for purposes of establishing jurisdiction under an alter ego theory because the Foreign Defendants do not exercise sufficient control over the business operations and day-to-day affairs of CBM US for CBM US to be the alter ego of the Foreign CBM Defendants.[6]

The Defendants support their position with two declarations. Samuel Turbost, Managing Director and Chief Executive Officer of CBM SAS, attests that CBM SAS is a French corporation that has no physical place of business in the United States and maintains a separate corporate existence from CBM US. Turbost Decl., Ex. E to CBM Mot., ECF No. 30-6. Alain Fauconnet, President of CBM N.A., makes similar representations about CBM N.A., a Canadian corporation.

Plaintiff responds and offers three bases for this Court's jurisdiction over the Foreign CBM Defendants. First, Plaintiff argues that this Court has specific jurisdiction over CBM SAS

---

[6]     The parties do not seem to dispute that this Court has jurisdiction over CBM US.

and CBM N.A. because Plaintiff's claims arise out of the Foreign CBM Defendants' contacts with Pennsylvania. Plaintiff asserts that the Foreign CBM Defendants "reached into Pennsylvania" by contacting Supplee and convincing him to defect to CBM, establishing CBM US in Pennsylvania, and using Neopart's confidential information to sell CBM products in Pennsylvania. Second, Plaintiff responds that this Court has jurisdiction over the Foreign CBM Defendants through their alter ego, CBM US. Plaintiff argues that CBM US's contacts with Pennsylvania can be imputed to the Foreign CBM Defendants. Lastly, Plaintiff argues that this Court has jurisdiction over the Foreign CBM Defendants under the "federal long-arm statute" contained in Federal Rule of Civil Procedure 4(k)(2). Pl.'s Opp. CBM 25, ECF No. 34. Plaintiff contends that CBM SAS and CBM N.A. solicited business in the United States and made sales directly to United States customers and that their agents attended trade shows in the United States.

In support of these contentions, Plaintiff submits various items from the CBM Defendants' shared website, intended to show their connections with Pennsylvania and that CBM US is their alter ego. Plaintiff argues that the following findings support jurisdiction:

(1) The CBM website is copyrighted "2017 CBM Groupe", Ex. 4 to Pl.'s Opp. CBM, ECF No. 34-6;

(2) The website's header appears substantially the same regardless of whether the visitor selects their location in France, Canada, or the United States, Ex. 3 to Pl.'s Opp. CBM, ECF No. 34-5;

(3) A holiday press release offers greetings from "France … the USA and Canada," Ex. 8 to Pl.'s Opp. CBM, ECF No. 34-10;

(4) CBM advertises that "CBM has operational teams, specialists in replacement parts for coaches, buses and trams in each country," Ex. 4 to Pl.'s Opp. CBM, ECF No. 34-6;

(5) The general conditions of use page on the website states that the website is the property of CBM and lists the address of CBM SAS in France as the address of CBM's head office, Ex. 5 to Pl.'s Opp. CBM, ECF No. 34-7;

(6) CBM advertises that it has only eight "logistic centres" despite a presence in "more than 60 countries", Ex. 4 to Pl.'s Opp. CBM, ECF No. 34-6;

(7) CBM boasts about its sales and distribution success in the aggregate as opposed to by entity, Ex. 4 to Pl.'s Opp. CBM, ECF No. 34-6;

(8) The website appears to list the same customer service telephone and fax for CBM Canada and CBM US, Ex. 6 to Pl.'s Opp. CBM, ECF No. 34-8.

Plaintiff also attaches an advertisement printed in several issues of *Busline Magazine* that lists CBM Canada's address and contact information alongside Supplee's contact information as a "Contact in USA." Ex. 15 to Pl.'s Opp. CBM, ECF No. 34-18. Plaintiff also contends that representatives from CBM SAS and CBM N.A. attended trade fairs alongside representatives from CBM US.

Additionally, Plaintiff provides a declaration from Harold Boade, the Chief Executive Officer of Neopart Transit, LLC. Ex. 1 to Pl.'s Opp. CBM, ECF No. 34-1. Boade recalls that a CBM N.A. representative made a sales call into the United States before CBM hired Supplee and mentioned that CBM was looking for a salesman in the United States. Boade Decl. ¶ 10. After Supplee left, Neopart sent a demand letter seeking the return of its confidential information, and Samuel Turbost contacted Boade regarding a possible transaction with Neopart. Boade Decl. ¶

17. Turbost represented himself as the Managing Director of CBM Group and signed a confidentiality agreement in that capacity. *Id.* Turbost stated that Alain Fauconnet would be involved in the potential transaction, and copied Paulette Lavallee, another CBM N.A. manager on the communication. *Id.* Boade relates that Turbost, Fauconnet, and Lavallee visited Neopart's facility in April 2015. Boade Decl. ¶ 19. Additionally, he observed representatives of the Foreign CBM Defendants working alongside Supplee in a CBM N.A. booth at the APTA Expo in Atlanta in October 2017. Boade Decl. ¶ 20.

Rule 4(e) of the Federal Rules of Civil Procedure "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992). In Pennsylvania, the applicable law is the long-arm statute codified at 42 Pa. Cons. Stat. § 5322. *Pennzoil Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197, 200 (3d Cir. 1998). The statute permits the Pennsylvania courts to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.*; *Farino*, 960 F.2d at 1221.

A nonresident defendant may be subject to personal jurisdiction in a given state under either general or specific personal jurisdiction. *Brooks v. Bacardi Rum Corp.*, 943 F. Supp. 559, 561 (E.D. Pa. 1996). A court that has general jurisdiction over a non-resident corporation has jurisdiction for purposes of any suit, even causes of action unrelated to defendant's activities within the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). For a corporation, the "paradigm forum for the exercise of general jurisdiction is . . . one in

which the corporation is fairly regarded as at home." *Id.*[7] Specific jurisdiction, on the other hand,

exists when the defendant has "purposefully directed his activities at residents of the forum and

the litigation results from alleged injuries that arise out of or relate to those activities." *Miller*

*Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (quoting *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 472 (1985)).

To determine whether it has specific jurisdiction, a court must consider three factors: (1)

whether the defendant purposefully directed its activities at the forum state; (2) whether the

litigation arises out of or relates to at least one of those activities; and (3) whether the exercise of

jurisdiction otherwise comports with fair play and substantial justice." *D'Jamoos v. Pilatus*

*Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 472 (1985)). "The first two parts of the test determine whether a defendant has the requisite

minimum contacts with the forum." *D'Jamoos*, 566 F.3d at 102-03. "[I]t is essential in each case

that there be some act by which the defendant purposefully avails itself of the privilege of

conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). If

the first two elements are satisfied, "a court has the option of evaluating whether exercising

jurisdiction comports with notions of 'fair play and substantial justice,'" because "even if a

defendant has the requisite minimum contacts with the forum state, other factors may militate

against exercising jurisdiction." *Pennzoil Prods. Co.*, 149 F.3d at 205.

The Court of Appeals for the Third Circuit has observed that "[p]hysical entrance is not

required" for a defendant to purposely avail itself of the privilege of conducting activities within

the forum. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007); *see also*

*Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and

---

[7]     Plaintiff does not argue that the Foreign CBM Defendants are subject to general
jurisdiction in Pennsylvania.

telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."). However, "what is necessary is a deliberate targeting of the forum." *O'Connor*, 496 F.3d at 317. "Identifying some purposeful contact with the forum is but the first step in the specific-jurisdiction analysis. The [plaintiff's] claims must also 'arise out of or relate to' at least one of those contacts." *Id.* at 318. In determining whether a claim arises out of or relates to a given contact, "the analysis may begin" with a "but-for" causation inquiry in which the court considers whether "the plaintiff's claim would not have arisen in the absence of the defendant's contacts." *See id.* at 319, 322. However, although the "but-for" inquiry may be a starting point, "[t]he animating principle behind the relatedness requirement is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable." *Id.* at 322. In other words, "[o]ut-of-state residents who 'exercise[ ] the privilege of conducting activities within a state . . . enjoy[ ] the benefits and protection of' the state's laws; in exchange, they must submit to jurisdiction over claims that arise from or relate to those activities." *Id.* at 322 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945)).

Under the "alter ego" theory, if a subsidiary is merely the agent of a parent corporation, or if the parent corporation otherwise "controls" the subsidiary, and general or specific personal jurisdiction exists over the subsidiary, then personal jurisdiction exists over the parent. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (*citing D'Jamoos*, 566 F.3d at 108-09 and *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008)). The question of whether an alter ego relationship exists "should be examined in terms of the legal interrelationship of the entities, the authority to control and the actual exercise of control, the administrative chains of command and organizational structure, the performance of functions, and the public's

perception." *Simeone ex rel. Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005) (quoting *In re Latex Gloves*, 2001 WL 964105, at *12). Courts in this district consider ten discrete factors to decide whether one entity is the alter ego of another:

> (1) ownership of all or most of the stock of the related corporation; (2) common officers and directors; (3) common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance by the related corporation of business functions which the principal corporation would normally conduct through its own agent or departments; (9) acting of the related corporation as marketing arm of the principal corporation, or as an exclusive distributor; and (10) receipt by the officers of the related corporation of instruction from the principal corporation.

*Id.*; *In re Latex Gloves*, 2001 WL 964105, at *3-4. Although one aspect of the relationship between two corporations will not unilaterally dispose of the analysis, a review of existing case law demonstrates that the most significant pieces of evidence are those that concern the existence (or non-existence) of a parent company's control over its subsidiaries' day-to-day functions. *See In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 388-95 (M.D. Pa. 2009); *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 422-23 (E.D. Pa. 2005).

Plaintiff tries to show that CBM US is the alter ego of the Foreign CBM Defendants and analyzes the ten *Latex Glove* factors. Plaintiff points out that CBM US is a wholly owned subsidiary of CBM SAS and that the three entities share managers and supervisors. For example, Alain Fauconnet, President of CBM N.A., is also the Operating Manager and President of CBM US, and was one of the decision-makers when CBM considered a transaction with Neopart after Supplee left and Neopart sent its demand letter. Pl.'s Opp. CBM 21, ECF No. 34. Samuel Turbost, the Managing Director and CEO of CBM SAS, is also the Managing Director of CBM US and represents himself as the managing director of the whole CBM group. Turbost, too, was

one of the decision-makers for CBM in the proposed transaction with Neopart. *Id.* Plaintiffs also argue that the CBM entities maintain a unified marketing image: they all use the same website, trademarks, and logos. Plaintiff points to the various news items and communications from CBM's website it submitted to show that the various CBM entities considered themselves a single team or group. Plaintiff asserts that statements on the CBM website show that the CBM entities all use the same sales and distribution systems. Plaintiff also attempts to show that CBM US is the exclusive distributor in the United States for parts that CBM SAS and CBM N.A. procure, and that CBM US receives all its directions from the Foreign CBM Defendants' officers and managers. Pl.'s Opp. CBM 23-24.

Plaintiff has not carried its burden to establish personal jurisdiction over the Foreign CBM Defendants at this stage. Once a defendant has raised a jurisdictional defense through a 12(b)(2) motion, the plaintiff must establish jurisdiction through sworn affidavits or other evidence—in short, "[o]nce the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984). In support of jurisdiction, Plaintiff has produced only a single declaration from its CEO, various items from CBM's website, and advertisements from *Busline Magazine*. This evidence does not establish that the Foreign CBM Defendants exert the level of control over CBM US necessary to impute CBM US's contacts to the Foreign CBM Defendants. And although Plaintiff tries to show that the Foreign CBM Defendants reached out into Pennsylvania to entice Supplee away from Neopart, it does not support this contention with sufficient evidence.

However, this Court grants Plaintiff the opportunity to conduct jurisdictional discovery. "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right

to conduct jurisdictional discovery should be sustained." *Toys "R" Us v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Mellong Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.3d 1217, 1223 (3d Cir. 1992)). Courts should grant jurisdictional discovery unless the plaintiff's claim is "clearly frivolous." *Id.* This Court concludes that Plaintiff does not make a frivolous claim to jurisdiction. Plaintiff alleges that the Foreign CBM Defendants solicited Supplee in Pennsylvania; whether the Foreign CBM Defendants specifically directed their activities at Pennsylvania, and whether Plaintiff's claims arise from those activities will depend upon the specific facts surrounding CBM's solicitation of Supplee. Additionally, Plaintiff has shown some evidence of CBM US and the Foreign CBM Defendants' close connection, and Plaintiff alleges that the three Defendant entities use "the same inventory, sourcing, procurement, accounting, information management, customer service, marketing, and human resources systems, Amended Compl. ¶¶ 25d–h, which would support its alter ego theory. Plaintiff should have the opportunity to develop these facts. Therefore, Defendants' motion to dismiss for lack of jurisdiction is denied without prejudice to Defendants' right to renew it at the close of jurisdictional discovery.

**4. Defendants' motion to dismiss on the basis of improper service is denied without prejudice until the conclusion of jurisdictional discovery.**

Defendants also move to dismiss on the ground that Plaintiff did not serve the Foreign CBM Defendants properly. They contend that Plaintiff has not complied with the requirements of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents as required to satisfy Federal Rules of Civil Procedure 4(h) and 4(f). CBM Mot. 7. Plaintiff responds that it did properly serve the Foreign CBM Defendants when it served CBM US, because CBM US is the alter ego of the Foreign CBM Defendants. Pl.'s Opp. CBM 6. Because the question of whether Plaintiff properly served the Foreign CBM Defendants depends upon

whether CBM US is their alter ego, a question this Court will determine after jurisdictional discovery, this Court also denies Defendants' motion to dismiss on the basis of improper service without prejudice to Defendants' right to renew the motion at the close of jurisdictional discovery.

## IV.     CONCLUSION

For the reasons stated above, Defendant Supplee's motion is granted in part and denied in part, and the CBM Defendants' motion is granted in part and denied in part without prejudice to the CBM Defendants' right to renew the motion after the parties conduct jurisdictional discovery. A separate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Court